UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| CSX TRANSPORTATION, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV416-117 |
| JAMES MICHAEL KIRKLAND, TRANSPORTATION INC. AGENT GROUP, and NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

In this truck-versus-train property damage case, plaintiff CSX Transportation, Inc. moves to strike a defense expert witness report and exclude his testimony. Doc. 58. Defendants oppose. Doc. 63; doc. 67.

## I. BACKGROUND

CSX seeks damages after a truck driven by James Michael Kirkland[1] stalled on its railroad tracks and was hit by an oncoming CSX train. Doc. 1. The accident resulted in damages to CSX's locomotive, crossing gates, and signal houses. Doc. 58. CSX also claims

---

[1] Kirkland was driving a truck owned by defendant Transportation Inc. Agent Group (TIAG) and operating the truck under TIAG's authority at the time of the accident. Doc. 57. Defendant New Hampshire Insurance Company insures TIAG. Doc. 1.

1

damages from managing traffic at the accident site and loss of use of its locomotive. *Id.* Defendants hired Rimkus Consulting Group, Inc. to analyze those damages. Rimkus, in turn, hired Allen W. Haley, Jr. as an independent contractor. Doc. 63. Haley has over 28 years of experience in the railroad industry and has expertise in both railroad accident investigations and operating budgets. Doc. 38-3.

The defendants filed Haley's expert report on October 18, 2016, doc. 38, and CSX deposed him on February 6, 2017. Doc. 58; doc. 65. Discovery then ended on February 17, 2017. Doc. 47. On March 20, 2017, the last day to file motions, *id.*, defendants filed an amended report based on the discovery that took place after they filed Haley's initial report.[2] Doc. 56. CSX moved to strike Haley's original report on the same day. Doc. 58. On April 3, 2017, defendants filed a second amended report in an attempt to respond to the concerns raised by CSX's strike motion. Doc. 63 at 5. CSX replied that it will file a

---

[2] CSX produced significant discovery after Haley's report was filed on October 18, 2016. Doc. 38. CSX first allowed defendants to view the video of the accident recorded by the locomotive camera on January 4, 2017. Doc. 65. Then, CSX's witnesses were deposed January 5 - 11, 2017. *Id.* Plus, CSX continued to produce documents from November 21, 2016 through February 3, 2017 (Bates pp 95 – 640). Doc. 63.

2

separate motion to strike the two amended reports; it has yet to do so. Doc. 64.

Haley's October 18, 2016 report contains a spreadsheet, Exhibit A, and two other exhibits, including one that states Haley's opinion that "[t]he investigation to date indicates that the driver may have tried to get across the tracks in a hurry when he heard the train approaching and the vehicle stalled and was struck. There is no indication at this time of any mechanical malfunction of the insured vehicle." Doc. 38-2 at 17. Within the report, there is an explanation of the exhibits, Haley's rate of compensation, and an assurance that a list of the cases he has testified in as an expert in the last four years will be provided within 14 days.[3] Doc. 38.

Exhibit A, Haley's opinon, is a settlement estimate prepared as a spreadsheet that details CSX's post-accident expenses. Doc. 38-1. They are divided into various categories, including "Labor Roadway," "Labor Signal," and "Material Inven New." *Id.* There are specific line item expenses under each category. *Id.* For example, under "Labor Roadway," there is a line item expense for "Overtime Labor–Flagging."

---

[3] Defendants later did just that, doc. 41, though they missed the October 18, 2016 deadline by eight days. Doc. 24. CSX nevertheless does not cite that as a basis to strike the report. Doc. 58.

*Id.* For each line item, Haley includes the amount claimed by CSX, a verified claim total, an adjustments total, comments, and then his settlement estimate. *Id.* On the last page, Haley lists his grand totals, including the "CSX Invoice Total," the "Verified Total," the "CSX Invoice Total -- Adjustments," the "Settlement Estimate," and the "Estimated CSX Settlement Value." *Id.* Exhibit B contains all of the information Haley used to prepare his opinion, including pictures of the accident and resulting damage, a news report, the police report from the accident, and invoices from CSX and the police department for expenses incurred after the accident. Doc. 38-2. Exhibit C is Haley's qualifications and list of publications. Doc. 38-3.

In Haley's first amended report, he revised Exhibit A based on the discovery that unfolded after he filed his first report. Doc. 56. Haley increased the total settlement estimate from $191,355.36 to $249,360.56. *Id.* Defendants explain in the second amended report that the estimate increased because the additional discovery allowed Haley to verify more of CSX's claims. Doc. 61. Haley also offered an opinion on liability based on the deposition of a CSX employee and the event data recorder printout. Doc. 56.

4

Haley's second amended report attempts to address the concerns in CSX's strike motion. Doc. 61. Exhibit 1 is a revised version of his opinion, (Exhibit A in the first two reports) and Exhibits 2-6 are his notes and calculations. *Id.* Haley altered his spreadsheet, Exhibit 1, by removing the footer that states "This document is prepared for the purposes of claim settlement only and is not an admission of liability or is it intended to be proof of the validity, invalidity, or the specific amount of the claim that is in dispute." Doc. 38. He also deleted the lines for "CSX Invoice Total," "Verified Total," "CSX Invoice Total-Adjustments," "Settlement Estimate," and "Estimated CSX Settlement Value." Doc. 61

Next, the defendants explain that there is a $26,000 difference between "Claim Total Verified" and "Settlement Estimate" because CSX has not provided documentation supporting that amount. *Id.* They also point out that the "overhead markup" reduction in the comments column means that Haley calculated his estimate figure based on an employee's hourly wage plus 62% to cover employee benefits. *Id.* Haley calculated the figures based on his knowledge and experience, and his calculations are contained in Exhibit 4. *Id.* Haley changed the 62% to

65% in some areas to match his deposition testimony; those calculations are contained in Exhibit 5. *Id.* The report also explains that the settlement estimate increased in the first amended report because Haley was able to verify more damages figures when he reviewed documents that were produced after he filed his first report. *Id.*

The defendants then confirm that Haley's report is based on CSX's full claim documents, including pages 1-88 that were not included with the original report. *Id.* They reconfirm that Exhibit 1 represents Haley's full opinion, plus his reasons and the basis for his opinion. *Id.* Finally, Exhibit 6 is Haley's notes on the event data recorder download that he used to prepare his opinion on precisely when Kirkland's truck entered CSX's railroad crossing. *Id.*

## II. Analysis

### A. Expert Report – Substance Requirements

CSX moves to strike Haley's first report and expert testimony on the grounds that the report does not comply with Fed. R. Civ. P. 26(a)(2)(B), which states that an expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's

qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Rule 26(a)(2)(B).

In 2010, the Rule was amended to require "facts and data," rather than "data or other information." *Id.* But it should still be interpreted broadly to "extend[] to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.*

Fed. R. Civ. P. 26(e)(2) imposes a continuing duty to supplement an expert report, which "extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

Rule 26(a) and 26(e) are enforced by Fed. R. Civ. P. 37(c)(1), which states that a party cannot use information or a witness at trial if the party did not disclose the information or witness according to the Rules "unless the failure was substantially justified or is

harmless."

These Rules ensure that the opposing party has adequate notice of an expert's testimony, thus preventing unfair surprise at trial. Jenkins *v. Aramark Unif. & Career Apparel, Inc.*, 2001 WL 36106201, at *3 (S.D. Ga. Mar. 21, 2001); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361 (11th Cir. 2008) ("Rule 26's 'expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination'") (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)); *Mixon v. United States*, 58 F. Supp. 3d 1355, 1365 (M.D. Ga. 2014) ("The idea is to give the substance of the testimony which an expert is expected to give on direct examination.") (quotes and cite omitted).

CSX first argues that Haley's report is deficient because it is an "empty-shell without the statement of opinions," doc 65 at 5, and is not a "sufficient expression of what the expert intends to testify about to qualify as notice required by the federal rules." *Id.* at 4. Nor, it further argues, does it include the bases and reasons for his opinions because it does not "contain any statement of where Mr. Haley came up with the

burden rate that he believed should apply, and . . . failed to include analytical formulas which CSX or the Court could test to determine the credibility of Mr. Haley's settlement recommendations." *Id.* at 3.

The Court disagrees. Despite CSX's contentions, Haley's spreadsheet is a fairly straightforward document that clearly states his opinion. Haley took the damages figures CSX provided in discovery, and either accepted the figures and added them into his settlement estimate, or proffered a different figure based on whether there are supporting documents, whether there is a markup, or if there are tax considerations. The report shows which of CSX's numbers that Haley will accept or challenge, thus preventing any surprises in his testimony. *See Jenkins*, 2001 WL 36106201 at *3 (expert report was compliant because it was "sufficiently detailed to alert counsel of the substance of the expert testimony."). Similarly, Haley has offered up enough "basis and reasons" for his opinions within the report's spreadsheet.[4] The comments column adequately explains why a certain number was

---

[4] Haley, CSX claims, admitted that his report fails to contain the basis and reasons for his opinions in his deposition. *See* Doc. 63-3 at 16:22-17:2. (" Q: (By Mr. Cohen) I mean, the statement that you prepared for settlement purposes did not contain the basis and reasons for your conclusions. Is that fair to say? A: This spreadsheet did not. That's correct, sir."). Despite what CSX may think, Haley's view is not determinative here. Rather, it is up to the Court to determine whether the report contains the basis and reasons for the expert's opinion; we have concluded it does.

included in the settlement estimate. There is not "any suggestion in Rule 26(a)(2) that an expert report is incomplete unless it contains sufficient information and detail for an opposing expert to replicate and verify in all respects both the method and results described in the report." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121–22 (D. Colo. 2006). The bottom line is that a report must help the opposing party prepare for a deposition and cross examination. *Reese*, 527 F.3d 1253, 1265 (11th Cir. 2008); *see also Butler v. Goodyear Tire & Rubber Co.*, 2014 WL 7272604, at *1 (S.D. Ga. Dec. 18, 2014) (Rule 26(a)(2)'s requirements "are aimed at communicating the essence of what each expert will say so that adversaries may meaningfully depose them before discovery expires"). Haley's report meets that threshold, so it meets the requirements of 26(a)(2)(B)(i).

B. Expert Reports -- Supporting Documents

CSX next argues that Haley's report fails to comply with Rule 26(a)(2)(B)(ii) because the report does not contain all of the report's preparation documents. Doc. 58. Defendants concede that two sets of documents are not included: pages 1-88 of CSX's damages claim, and Haley's work pages with margin notes and calculations. Doc. 63. But

neither of these omissions, they contend, renders the report non-compliant because the damages claim was omitted innocuously and the Rules do not require that work notes be attached. *Id.*

The Court agrees. It is clear that Haley was using pages 1-88 of CSX's damages claim based on his report and CSX certainly had access to its own documents. Defendants have now explicitly explained that Haley relied on the documents, doc. 61, so there has been no prejudice to CSX. Too, Haley's working notes were not required to be produced under Fed. R. Civ. P. 26(a)(2)(B)(ii). That Rule requires only "facts or data." *See Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 35 (1st Cir. 2004) (expert was not required to produce working notes as part of expert report). Even if defendants were required to provide Haley's notes, CSX suffered no prejudice because they have since produced the notes and calculations. Doc. 61. *See Loff v. The Landings Club, Inc.*, 2006 WL 5537588, at *3 (S.D. Ga. July 17, 2006) (defendant was not prejudiced by expert's late disclosure of testing data).

Finally, CSX says Haley's report is inadequate because the spreadsheet he offered as part of his opinion was originally prepared for settlement purposes. Doc. 58. CSX points to the spreadsheet's footer

identifying it as only "for settlement purposes." Doc. 38. But that's just a routine gaffe, certainly nothing to invalidate the report under 26(a)(2). Indeed, there is nothing within the Rule that precludes a document originally prepared for settlement purposes to later be proffered as an expert report.[5]

## III. CONCLUSION

There is no basis either to strike Haley's first expert report or to preclude Haley from testifying about his first expert report. Accordingly, CSX's motion, doc. 58, is DENIED.

### A. Motion to Withdraw Admissions

Defendant New Hampshire Insurance Company has also filed a motion to withdraw admissions after its counsel failed to respond to CSX's discovery. Doc. 57. CSX has not filed any response to that motion, so it is deemed unopposed. *See* LR 7.5. Therefore, the Court **GRANTS** New Hampshire Insurance Company's motion to withdraw the admissions. Doc. 57.

---

[5] The Court notes that "Rule 408 of the Federal Rules of Evidence forbids the introduction of settlement offers to prove or disprove liability." *CNA Fin. Corp. v. Brown*, 162 F.3d 1334, 1338 (11th Cir. 1998). What defendants are doing here is distinguishable because the settlement estimate is based on Haley's conclusions about the damages CSX allegedly suffered, not as proof of its liability.

**SO ORDERED**, this  24th   day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA